26244. HARRISON et al. v. RAINEY.

ARGUED DECEMBER 16, 1970—DECIDED JANUARY 29, 1971.

*George P. Dillard, Herbert O. Edwards, Robert E. Mozley,* for appellants.

*William R. Carlisle, J. Max Davis,* for appellee.

MOBLEY, Presiding Justice. This appeal by the Chairman and Commissioners of the DeKalb County Board of Commissioners of Roads and Revenues is from a judgment of DeKalb Superior Court granting an interlocutory injunction enjoining them from: mailing at the county's expense brochures urging or promoting alteration of the political structure of the county; utilizing county employees while in the employ of the county to distribute the brochures or to otherwise promote the City-County of DeKalb consolidation; authorizing or making any further payment of fees or expenses to attorneys incurred in connection with the City-County of DeKalb proposal; and use of public funds or accounts to promote the city-County of DeKalb proposal, including payment for services already rendered or to be rendered, and payment for materials supplied or to be supplied.

The court in its order stated that it was not the purpose of the order to curtail or restrict free expression of opinion or ideas on the matter by defendants in their individual capacities, but only to enjoin use of public money to promote consolidation or altera-

tion of the present city and county governments.

The rulings made in this judgment are enumerated as error, and error is assigned on the temporary restraining order previously issued.

No ruling is required on the temporary injunction, since the interlocutory injunction superseded it. *Mitchell v. Hayden, Stone, Inc.*, 225 Ga. 711 (1) (171 SE2d 280).

The election to determine whether the voters would approve the Constitutional Amendment has been held and the voters have defeated that proposal. However, it is necessary to rule on the interlocutory injunction, since a decision on that judgment will determine the authority of the county to pay the attorneys' fees incurred and the expenses of printing the brochures promoting the consolidation of the city-county governments.

■ The first issue is whether the county commissioners are authorized under the Constitution and laws of this State to expend county funds, and use county employees on county time to seek approval by the voters of a proposed Constitutional Amendment to abolish the existing form of county government, that is, Commissioners of Roads and Revenues, and to substitute therefor the "City-County of DeKalb."

Clearly the chairman and the members of the Board of Commissioners have the right, in their individual capacities, to support the adoption of the Constitutional Amendment by the voters of DeKalb County. They may expend their time, effort, and money to procure its adoption. But the question we must determine is whether they may use county money and county employees on county time to accomplish their purpose of abolishing the government of DeKalb County, which they operate, and substitute therefor a new government, the City-County of DeKalb.

The Constitution, Art. VII, Sec. IV, Par. II (*Code Ann.* § 2-5702) provides that: "In addition to such other powers and authority as may be conferred upon any county by this Constitution or by the General Assembly, counties are hereby authorized to exercise the power of taxation for the following purposes which are hereby declared to be public purposes and expend funds raised by the exercise of said powers for said purposes and such other public purposes as may be authorized by the General Assembly." This is

followed by 14 paragraphs setting out purposes for which such funds may be expended. None of these provide that county funds derived from taxation may be used to procure the adoption of a Constitutional Amendment authorizing the General Assembly to create by local Act a successor government to the existing government of DeKalb County, to be known as the "City-County of DeKalb."

The County Commissioners claim the authority to make such expenditures under the Constitution (*Code Ann.* § 2-5702 (1)) and *Code Ann.* § 92-3701 (1) (Ga. L. 1946, p. 87; Ga. L. 1958, p. 370; Ga. L. 1962, pp. 458, 459; Ga. L. 1970, p. 582), to wit: "Pay the expenses of administration of county government." *Code Ann.* § 2-5702 (1). The question for determination is whether the acts of the county commissioners complained of amount to administration of the county government.

The County Commissioners adopted a resolution titled, "City of DeKalb Study," reciting that: Whereas, the General Assembly has adopted a resolution calling for a referendum on a Constitutional Amendment which would authorize the creation of the City-County of DeKalb; and whereas, information about the provisions of a possible charter of the City-County of DeKalb should be made available to the citizens of the county before a vote on the Constitutional Amendment is held; and whereas, information about the benefits to be gained by taking this action should be made available to the voters before the vote on the Amendment is held; now, therefore, it is resolved that an appropriation not exceeding $15,000 is made for the purpose of studying, assembling and distributing information about a City-County of DeKalb.

Following that, the county attorney and another attorney employed for this purpose, prepared a memorandum of law consisting of 76 pages; a proposed bill consisting of 66 pages, amending the Act, Ga. L. 1956, p. 3237 et seq., abolishing the "Chairman and Board of Commissioners of Roads and Revenues," and creating in lieu thereof the "City-County of DeKalb"; and another proposed Act, consisting of 71 sections and 96 pages, containing provisions governing the new government.

The expenditure of funds for the preparation of proposed legislation, described above, creating a charter for what was then pro-

posed to be the "City-County of DeKalb," but which did not exist since the Amendment to the Constitution was still to be voted on, is not authorized by law. It would be an utter waste of county funds to pay for the preparation of a charter for a city, which does not exist and may never exist, and which had not been authorized by the Constitution.

The court did not err in enjoining the Commissioners from mailing at county expense the brochures or other matter urging or promoting the creation of a new form of government to replace the governing body of the county, the "Chairman and Board of Commissioners of Roads and Revenues." Expenditure of money by the Commissioners to abolish the existing government which they operate is not within their power, for their duty is to "pay the expenses of the administration of the county government," and not to pay for its demise and the creation of a substitute for it.

■ After careful consideration of the memorandum of law, we are of the opinion that the expenditure of county funds for its preparation is legal. The first 52 pages relate solely to existing law as to the governing body of the county, the "Chairman and Board of Commissioners of Roads and Revenues," its duties, responsibilities, etc. The last 24 pages deal with the general powers of a municipality, which information can be useful to the governing body of the county, as the cities make up much of the population of the county and are a part thereof. This memorandum of law would not have contributed to procuring voters' approval of the proposed Constitutional Amendment.

■ There is no merit in the Commissioners' contention that the restriction on the mailing of the brochures was a violation of the First and Fourteenth Amendments of the Federal Constitution and Art. I, Sec. I, Par. XV of the State Constitution (*Code Ann.* § 2-115). The court did not restrict distribution of the brochures, except at public expense. There was no violation of their right of free speech. They were only enjoined from speaking at county expense.

■ The trial court did not err in granting the interlocutory injunction, except as to the payment for the preparation of the memorandum of law dealt with in Division 2.

*Judgment affirmed in part; reversed in part. All the Justices concur.*