## 37026. PEACOCK et al. v. GEORGIA MUNICIPAL ASSOCIATION, INC.
## 37027. PEACOCK et al. v. ASSOCIATION OF COUNTY COMMISSIONERS OF GEORGIA.

CLARKE, Justice.

Plaintiffs, appellants here, are a group of policemen, retired policemen, and civilians. Defendant Georgia Municipal Association (GMA) is a voluntary, non-profit, non-partisan corporation organized in 1935 and incorporated in 1969, whose stated purpose is to identify, promote, and serve the needs and best interests of the state's municipalities. Over 400 incorporated towns and cities in Georgia are members. Defendant Association of County Commissioners of Georgia (ACCG) is an organization chartered under the laws of the State of Georgia. Its membership includes elected county officials as well as other members, and a portion of its revenues are derived from membership dues paid by member counties. Both defendants conduct legislative activities on behalf of their respective members. In the case of both GMA and ACCG, the plaintiffs allege various lobbying activities directed at influencing state legislators. Plaintiffs allege that these activities of defendants are carried out and financed by tax revenues and that the activities and their method of financing are in violation of the constitution and statutes of the state. Plaintiffs seek to enjoin defendants from conducting the activities listed and to enjoin the defendants from using public tax dollars for support of programs and activities complained of. Finally, plaintiffs seek to recover all tax monies appropriated by defendants.

In both cases, defendants filed motions to dismiss for failure to join indispensable parties, municipalities and county governing associations. Plaintiffs in both cases filed motions for summary judgment. The trial court granted defendants' motions to dismiss in both cases and denied plaintiffs' motions for summary judgment. It is from these orders that plaintiffs, appellants here, appeal.

1. Plaintiffs complain that lobbying activities carried on by defendant associations include employment of a lobbyist, the sponsoring of meals, seminars, and meetings for legislators in an attempt to influence legislation; the mailing of literature and other materials to legislators; personal consultation with individual legislators or groups of legislators, or entertainment of various legislators or groups of legislators. The first question we must consider is whether these activities, if performed by a private organization, would be subject to injunction. The Georgia Constitution, Art. I, Sec. II, Par. XII (Code Ann. § 2-212), declares

lobbying to be a crime. The definition of lobbying found in Code Ann. § 47-1001 (Ga. L. 1978-79, pp. 29, 30) is as follows: "Lobbying is any personal solicitation of a member of the General Assembly, during a session thereof, by private interview, or letter, or message, or other means, not addressed solely to the judgment, to favor or oppose, or to vote for or against any bill, Resolution, report, or claim, pending or to be introduced in either branch thereof, by any person who misrepresents the nature of his interest in the matter to such member, or who is employed for a consideration by a person or corporation interested in the passage or defeat of such bill, Resolution, report, or claim, for the purpose of procuring the passage or defeat thereof."

It is important to note that this definition of lobbying proscribes only contact "not addressed solely to the judgment" of a member of the General Assembly. We construe this language to mean activity aimed at overcoming the independent judgment of a legislator through favors, promises, and the like, rather than honest attempts to persuade the legislator to adopt a specific point of view in the exercise of his independent judgment. The definition of lobbying contained within Code Ann. § 47-1001 specifically excludes "such service as drafting petitions, bills, or Resolutions, attending to the taking of testimony, collating facts, preparing arguments and memorials, and submitting them orally, or in writing, to a committee or member of the General Assembly, and other services of like character, intended to reach the reason of the legislators."

We conclude that the activities alleged by plaintiffs in these two cases are not activities which would constitute lobbying under Code Ann. § 47-1001. Therefore, it follows that if these activities were performed by private organizations, they would not be subject to injunction.

2. Since the acts complained of are not per se illegal and subject to injunction, the next question which must be addressed is whether the acts would be subject to injunction if financed from the tax receipts of cities and counties of the state. Plaintiffs allege that defendants are organizations, the membership of which are elected officials of cities, counties and certain towns and cities of this state. Plaintiffs further allege that the revenues necessary for financing the acts complained of come from the member governmental entities. Even if we found that these circumstances cause defendant organizations to be de facto public agencies or arms or instrumentalities of cities or counties, we could not conclude that the activities in which they engage are unlawful.

Cases upon which plaintiffs rely in opposing the use of public funds to pay the membership dues which enable defendants to carry

out their functions are inapposite. In both *Harrison v. Rainey,* 227 Ga. 240 (179 SE2d 923) (1971) and *McKinney v. Brown,* 242 Ga. 456 (249 SE2d 247) (1978), the activity enjoined was the attempt of county officials to influence the voters. The expenditure of tax monies by a political subdivision to influence the citizens and voters of that political subdivision is far different from the expenditure of tax monies to inform and influence the General Assembly on behalf of these citizens and voters in regard to issues involving the respective political subdivision. The expenditure by a political subdivision of public money to influence the citizens and voters of the entity contains within it the possibility of the corrupt use of influence to perpetuate a local administrator's power. See Miller v. Miller, 87 Cal. App. 3d 762 (151 Cal. Rptr. 197) (1979).

Appellants contend that the activities of defendants are not activities for which taxes could be levied. Therefore, appellants insist, tax money may not be appropriated for the membership dues in defendant associations. Although we find no Georgia cases on point, we hold that under the constitution and statutes of the state, both county governments and municipalities may levy taxes for public purposes connected with the administration of county and city governments. As a corollary to this principle, it follows that counties and municipalities may appropriate and expend money for such public purpose. In 1966, the Home Rule Amendment to the Georgia Constitution gave home rule to counties (Art. XI, Sec. II, Par. I, Code Ann. § 2-5901). The Municipal Home Rule Act of 1965, Code Ann. §§ 69-1015, et seq., extended self-government to municipalities. Both the Home Rule Amendment and the Municipal Home Rule Act contain certain restrictions, among them the prohibition against adopting any form of taxation beyond that authorized by the constitution or laws of the state. The Georgia Constitution at Art. IX, Sec. IV, Par. II (Code Ann. § 2-6102) describes certain supplementary powers which are given to counties and municipalities. Counties and municipalities are given authority to enact reasonable ordinances and to contract and combine with each other to effectuate and carry out the extensive supplementary powers granted. As a corollary, it is necessary that municipalities and counties have the authority to levy taxes to carry out the powers given. The taxing power of municipalities generally is set out in their respective charters, which are not a part of this record. These powers are subject to limitations and preemptions imposed by general law.

The Georgia Constitution, Art. IX, Sec. V, Par. II (Code Ann. § 2-6202) specifically authorizes counties to raise taxes for the exercise of certain enumerated purposes, as well as other public purposes authorized by the General Assembly. Among the public purposes

specifically enumerated is the payment of expenses of county government. We find that in today's complex world the activities carried on by defendant organizations constitute necessary activities for the administration of county government. Cf. Hays v. City of Kalamazoo, 316 Mich. 443 (25 NW2d 787) (1947).

Elected officials who participate as members and officers of defendant organizations are elected by the voters for the purpose of performing certain public functions. Among the functions of officers of municipal corporations or counties is to represent the views of the constituents to law-making bodies in regard to pending issues affecting the political subdivision. Since it is the responsibility of the government entities to represent the views of their constituents in this manner, it is proper to carry out this function in concert with officials of other governmental bodies. If the electors of a political subdivision disagree with the position taken by their officials, the remedy is at the ballot box.

3. There is no allegation in the complaint against either the GMA or the ACCG that it is a de facto public entity. We have found above that the activities complained of, if performed by a private organization, would not be subject to injunction. In the absence of an allegation that defendants here are indeed the alter egos of the counties and municipalities which they represent, we find that the entities or officials appropriating the funds allegedly used to finance the complained-of activities are indispensable parties to this litigation pursuant to Code Ann. § 81A-119. Since the defendants cannot be enjoined solely on the basis that they have done the acts alleged, they can be enjoined, if at all, because of the financing of the acts from the tax monies of the member municipalities and counties. In a suit to enjoin the expenditure of public funds, the entity or official appropriating the funds is an indispensable party. Accordingly, the order of the trial court in each of these cases dismissing for failure to join an indispensable party must be affirmed. Since the action in each instance was prior to trial and prior to any consideration of the merits, the trial court's denial of plaintiffs' motion for summary judgment was proper as well and must be affirmed.

*Judgment affirmed. All the Justices concur, except Hill, P. J., who concurs in the judgment only.*

DECIDED JUNE 16, 1981 —
REHEARING DENIED JUNE 30, 1981.

*Edward L. Hartness,* for appellants.
*George E. Glaze, R. Mark Mahler, Walter E. Sumner, E.*

744

*Kenneth Jones,* for appellee (case no. 37026).
*George P. Dillard, William P. Trotter,* for appellee (case no. 37027).