30551. SCHANCK et al. v. TOWN OF HEPHZIBAH.

HILL, Justice.

Owners, developers, and residents of Dunbarton Subdivision, located partially within and partially without the limits of the Town of Hephzibah, brought this complaint seeking to enjoin the town from discontinuing operation of a sewerage treatment plant serving the subdivision.

The undisputed facts are as follows: On May 20, 1970, Aumond Heights Corporation and others acquired the tract of land which is now Dunbarton Subdivision and subdivided a portion of it into 121 residential lots. It was contemplated that individual dwelling units would be

constructed with FHA and VA financing. In order to obtain FHA and VA approval, the developers were required to construct a sewerage treatment plant to be deeded to and operated by a municipal corporation or county.

On August 17, 1970, the Town of Hephzibah agreed, as shown by its letter, to accept the plant for maintenance and operation, subject to the conditions that the plant be approved by the Georgia Water Quality Control Board and that the developers pay the difference between the cost of operation and maintenance and the revenues received, until the plant became self-supporting. The plant was constructed adjacent to the subdivision outside the limits of the town.

On February 24, 1971, Hephzibah entered into a contract with R. O. Anderson for the purpose of operating and maintaining the plant and about October 1, 1971, the town began operation of the plant. About March 10, 1972, Hephzibah made application to the Georgia Water Quality Control Board for an operating permit.

On March 17, 1972, a deed conveying the plant to the town was executed by the Aumond Heights Corporation and others. Although this deed was never recorded, it was received by the town and remains in its possession. At the time this deed was delivered, the property was subject to an outstanding security deed. The property conveyed to Hephzibah was released from this security deed by quitclaim deed on September 2, 1975, after the town commissioners notified the subdivision owners on June 30 that the town would discontinue operation of the plant on August 31, 1975.

The Town of Hephzibah has been operating and maintaining the sewerage plant since October 1, 1971. Eighteen residential units have been built in the subdivision financed under the FHA or VA program. The residents have been paying the Town of Hephzibah for sewerage services since November 1971. The developers have been paying the town the difference between the cost of operation and the revenues received from residents.

The plaintiffs' complaint alleges that no other sewerage facilities are available to the owners and residents of the subdivision in that the lots are too small to

accommodate septic tanks.

After hearing, the trial court found from the deed conveying the property to the town that the parties had contemplated the discontinuance of the sewerage facilities by including the following language: "for use by the [town] as a sewerage treatment plant and access road for so long a time as the same is used for said purposes; nevertheless, in the event said sewerage treatment plant and access road thereto is discontinued, or should said land not be utilized for the purpose for which the same was conveyed, then and in that event, the title to said property shall revert to and become the property of the [grantors] herein." The trial court further found that acceptance of the facilities by the Town of Hephzibah was contingent upon approval by the Georgia Water Quality Control Board and payment by the developers of the difference between the cost of operation and maintenance and revenues received until the plant became self-supporting, and that there was no evidence of approval by the Water Quality Control Board or that the plant had become self-supporting. The trial court also found that the developers, at the time the deed was made to the defendant, did not hold fee simple title. The court concluded that the purported agreement between the plaintiffs and the town was without consideration and was unilateral as to the town and that any act pursuant thereto would be ultra vires. Plaintiffs appeal.

As we read the decision of the trial court, that court found that the grantors in the deed in question could not transfer title to the property because of the outstanding security deed, that the town's agreement to operate the treatment plant thus was without consideration to it, that the deed showed that the parties contemplated that the town could discontinue operation of the plant and thus the deed was unilateral, and that the town's operation of the facility on private property was ultra vires.

However, in *Tomkus v. Parker,* 236 Ga. 478 (1976), this court quoted approvingly from Pindar, Georgia Real Estate Law (1971), p. 805, § 21-49, as follows: "While a security deed passes legal title, it leaves an equitable title vested in the grantor which may be sold or otherwise disposed of in the same manner as a full legal title." In the

case before us, the grantor in the deed in question had equitable title to the sewerage treatment plant site and power to dispose of same. The deed conveyed title to the town and thus the agreement was not without consideration.

Taking into account the agreement by the town to maintain and operate the sewerage treatment plant (made to benefit purchasers of lots in the subdivision; some of whom are plaintiffs in this case), in addition to the deed conveying the plant to the town, those plaintiffs who are lot owners are entitled to insist upon the continued operation of the treatment plant. The town is not in position to argue that the quoted provision in the deed rendered the entire agreement unilateral, even as to the lot owners utilizing the facilities of the plant.

The town has authority to operate sewerage treatment facilities under general law, Code Ann. § 87-803, and in its charter, Ga. L. 1951, p. 2853, Secs. 2 and 3. The operation of the sewerage treatment plant by the town upon property it owns is not ultra vires.

The town argues that a city cannot be estopped from denying the validity of the deed. However, considering the town's statutory powers and its agreement to operate the sewerage treatment plant, we find no invalidity in the agreement as a whole or in the deed.

Once a municipality begins providing governmental services it is authorized by law to provide, discontinuance of such services must be justified. Whether the burden of justification be heavy or light we need not here decide because the town has offered no justification at all as to discontinuance of sewerage treatment services to its citizens and other residents of this subdivision.

It should be recalled that here the developers agreed that the plant would be operated by the city at no cost to it. That agreement has been and is being fulfilled. If improvements in the facility are needed to secure approval by the Water Quality Control Board, presumably that will be a cost of operation and maintenance.

For the foregoing reasons, the judgment of the trial court denying injunctive relief to plaintiffs on legal grounds must be reversed.

*Judgment reversed. All the Justices concur.*

SUBMITTED DECEMBER 3, 1975 — DECIDED APRIL 6, 1976.

*Henry J. Heffernan,* for appellants.
*Nicholson, Fleming & Blanchard, Chris G. Nicholson,* for appellee.