S04A0696. McLEOD et al. v. COLUMBIA COUNTY.

(599 SE2d 152)

CARLEY, Justice.

The Board of Commissioners of Columbia County adopted a stormwater management ordinance in 1999. That ordinance created the Columbia County Stormwater Utility to provide a threshold level of stormwater management throughout the entire county, and a higher level in a designated service area which includes the much more developed eastern portion of the county. Owners of developed property in that district are assessed a monthly stormwater utility charge based on the amount of impervious surface area located on their property. Four such owners (Appellants) brought suit in superior court against the County for declaratory and injunctive relief, alleging that the utility charge is unconstitutional. The County removed the case to the United States District Court for the Southern District of Georgia. That court determined that, pursuant to the federal Tax Injunction Act (TIA), it lacked subject matter jurisdiction, and remanded the case to the superior court. *McLeod v. Columbia County*, 254 FSupp2d 1340 (S.D. Ga. 2003). In an extensive order, the superior court granted the County's motion for summary judgment and denied Appellants' motions for partial summary judgment and for interlocutory injunctive relief. The superior court concluded that the Ga. Const. of 1983, Art. IX, Sec. II, Par. III (a) (6) and OCGA § 36-82-62 (a) (2), (3) authorized the utility charge; that the County was not required to establish a community improvement district under Ga. Const. of 1983, Art. IX, Sec. VII, Par. I; that the utility charge is a fee, not a tax, and thus is not required to be imposed ad valorem or uniformly; that the utility charge is not a taking in violation of the due process or equal protection provisions of the state or federal constitutions; and, that two of the Appellants owe utility charges. Appellants appeal from this order.

1. The Home Rule section of the Georgia Constitution grants any county or municipality the power to provide the service of "[s]torm water . . . collection and disposal systems." Ga. Const. of 1983, Art. IX, Sec. II, Par. III (a) (6). The General Assembly is authorized to enact general laws relative to such services, including statutes which permit the imposition of reasonable fees. Ga. Const. of 1983, Art. IX, Sec. II, Par. III (c), (d); *Board of Commissioners v. Guthrie*, 273 Ga. 1, 3 (2) (537 SE2d 329) (2000). One such general law, OCGA § 36-82-62 (a) (2), grants any governmental body the power to operate and maintain any undertaking, which is defined in part as "[s]ystems, plants, works, instrumentalities, and properties . . . [u]sed or useful in connection with the collection, treatment, and disposal of . . . storm water; together with all parts of any such undertaking and all

appurtenances thereto . . . ." OCGA § 36-82-61 (4) (C) (ii). The governmental body is authorized "[t]o prescribe, revise, and collect rates, fees, tolls, or charges for the services, facilities, or commodities furnished or made available by such undertaking . . . ." OCGA § 36-82-62 (a) (3). Although this statute is part of the Revenue Bond Law, the power to operate and maintain an undertaking and the power to collect fees or charges from undertakings are "clearly independent of the power to issue revenue bonds." *Krause v. City of Brunswick*, 242 Ga. 659, 660 (1) (251 SE2d 239) (1978). See also *Kelley v. City of Griffin*, 257 Ga. 407, 408 (1) (359 SE2d 644) (1987); *Schanck v. Town of Hephzibah*, 236 Ga. 530, 533 (224 SE2d 354) (1976). Therefore, pursuant to the Home Rule section of the Georgia Constitution and general statutory law, the County was authorized to establish the Stormwater Utility and to impose a utility charge for the stormwater management services.

Appellants contend that the County was required to establish a community improvement district (CID) under Ga. Const. of 1983, Art. IX, Sec. VII, Par. I et seq. However, nothing in that section of the Constitution indicates that its provisions are exclusive or that its purpose is to limit the Home Rule section and the statutes authorized thereby. Moreover, the legislature may authorize each CID to levy taxes, fees, and assessments "only on real property used nonresidentially, specifically excluding all property used for residential, agricultural, or forestry purposes . . . ." Ga. Const. of 1983, Art. IX, Sec. VII, Par. III (c). Thus, a CID allows the local government to place on private businesses, subject to certain consent requirements, the costs of financing infrastructure improvements necessitated by commercial or industrial development, in a manner advantageous to both the governing authority and the businesses within the CID. *Circle H Development v. City of Woodstock*, 206 Ga. App. 473, 474 (425 SE2d 891) (1992); Monacell, Community Improvement Districts as a Tool for Infrastructure Financing, 27 Ga. St. B. J. 203 (1991). The constitutional CID provisions did not furnish the County with an opportunity to create a CID which, like the Stormwater Utility, would charge residents for stormwater management services, or in which a high volume of property within the CID was residential or agricultural. Accordingly, Art. IX, Sec. VII, Par. I et seq. of the Georgia Constitution of 1983 is neither exclusive nor applicable in this case.

2. Appellants urge that the utility charge is a tax and, thus, must be imposed uniformly and ad valorem. See Ga. Const. of 1983, Art. VII, Sec. I, Par. III; Art. VII, Sec. II, Par. I.

"By far the most commonly contested legal issue surrounding stormwater utilities is whether the fee is actually a fee or whether it functions more as a tax. [Cit.]" Brisman, Considerations in Establishing a Stormwater Utility, 26 S. Ill. U. L. J. 505, 520 (V) (C) (3)

(2002). "Although it is often important to decide whether a particular charge is a tax or a fee, it is frequently difficult to discern whether a given enactment provides for a regulatory fee or authorizes simply a tax. [Cit.]" *Hadley v. City of Atlanta*, 232 Ga. App. 871, 872 (1) (502 SE2d 784) (1998). The distinction between a tax and a fee "is not one of names but of substance." *Richmond County Business Assn. v. Richmond County*, 224 Ga. 854, 856 (1) (165 SE2d 293) (1968). A legislative body's characterization of the amounts collectible "for services rendered as being fees is not controlling on the question of whether they constitute fees or taxes . . . . [Cits.]" *Gunby v. Yates*, 214 Ga. 17, 19 (102 SE2d 548) (1958).

This Court has defined a tax as " 'an enforced contribution exacted pursuant to legislative authority for the purpose of raising revenue to be used for public or governmental purposes, and not as payment for a special privilege or a service rendered.' [Cit.]" *Luke v. Dept. of Natural Resources*, 270 Ga. 647, 648 (1) (513 SE2d 728) (1999). A charge is generally not a tax if its object and purpose is to provide compensation for services rendered. *Gunby v. Yates*, supra at 19. *Gunby* looked to the law of other states, including Alabama and Kentucky.

> Although [other] states differ on how they distinguish between fees and taxes, certain common factors exist. First, taxes are a means for the government to raise general revenue [cit.] and usually [are] based on ability to pay (such as property or income) [cit.] without regard to direct benefits which may inure to the payor or to the property taxed. [Cit.] Fees, on the other hand, "are intended to be and should be clearly described as a charge for a particular service provided." [Cits.] Second, fees should apply based on the contribution to the problem. [Cit.] Third, fee payers, unlike tax payers, should receive some benefit from the service for which they are paying, although the benefits may be indirect or immeasurable. [Cits.] Although some jurisdictions have held that the benefits must be direct and exclusive, i.e., that the benefits must profit the particular person on whom the fee is imposed and may not assist the general public, [cit.] the trend seems to be in favor of upholding fees that confer intangible benefits on both those who are assessed and those who are not. [Cits.]

Brisman, supra at 520-522 (V) (C) (3). This trend extends to stormwater cases, where service charges have been sustained as fees and not taxes because of the indirect benefits to those assessed. *Densmore v. Jefferson County*, 813 S2d 844, 852 (IV) (Ala. 2001); *Long Run*

*Baptist Assn. v. Louisville and Jefferson County Metropolitan Sewer Dist.*, 775 SW2d·520, 522-523 (Ky. App. 1989) (citing one of the cases relied on in *Gunby v. Yates*, supra). But see *Bolt v. City of Lansing*, 587 NW2d 264 (Mich. 1998).

In a very persuasive opinion, the Supreme Court of Florida held that a special assessment for stormwater services was not an unauthorized tax. *Sarasota County v. Sarasota Church of Christ*, 667 S2d 180 (Fla. 1995). The Florida court relied on several aspects of the assessment which are shared with the utility charge here. In both instances, the fee applies to residential and non-residential developed property, but not to undeveloped property, which actually contributes to the absorption of stormwater runoff; the properties charged receive a special benefit from the funded stormwater services, which are designed to implement federal and state policies through the control and treatment of polluted stormwater contributed by those properties; and, the cost of those services was properly apportioned based primarily on horizontal impervious surface area. *Sarasota County v. Sarasota Church of Christ*, supra.

Whether a charge is voluntary is also a factor since, if it is not mandatory, it cannot be a tax. *Luke v. Dept. of Natural Resources*, supra. That factor, although not dispositive in the instant case, supports the view that the utility charge is a fee. Under the County's ordinance, property owners can reduce the amount of the charge by creating and maintaining private stormwater management systems. Compare *Bolt v. City of Lansing*, supra at 272 (II). Furthermore, the ordinance does not permit the imposition of a lien directly against the property of those who fail to pay the utility charge.

Moreover, as the Florida court noted, the requirement that the services be funded through a general ad valorem tax would shift part of the cost of managing the stormwater drainage problems, which are created by developed real property, to undeveloped property owners who neither significantly contributed to nor caused those problems. *Sarasota County v. Sarasota Church of Christ*, supra at 182.

Therefore, we conclude that the utility charge is not an invalid tax. The district court's determination that the charge is a "tax under state law" for purposes of the TIA does not affect our conclusion. Such an analysis clearly differs from state law determinations, because the concept of a tax under the TIA is broadly construed in light of the Act's overarching purpose of preventing federal court interference with state tax systems. *McLeod v. Columbia County*, supra at 1345 (II) (A).

3. Appellants further contend that the trial court erred in concluding that the utility charge was not arbitrary and capricious and did not violate their rights of due process or equal protection.

The undisputed evidence shows, as the trial court recited, that the utility charge is used only to pay for stormwater management

within the designated service area, that only the facilities and systems within that area take in runoff generated within the area, with one small exception, and that the amount of impervious surface is the most important factor influencing the cost of stormwater management services. Accordingly, the County's "method of apportioning the costs of the stormwater services is not arbitrary and bears a reasonable relationship to the benefits received by the individual developed properties in the treatment and control of . . . stormwater runoff." *Sarasota County v. Sarasota Church of Christ,* supra at 186.

4. Therefore, we conclude that the trial court was correct in granting summary judgment in favor of the County with respect to Appellants' constitutional claims and the County's counterclaims for unpaid charges, and in denying Appellants' motion for interlocutory injunctive relief.

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 28, 2004 —
RECONSIDERATION DENIED JULY 29, 2004.

*Tucker, Everitt, Wheale, Long & Brewton, John B. Long, John P. Batson,* for appellants.

*Hull, Towill, Norman, Barrett & Salley, James B. Ellington, Douglas D. Batchelor, Jr., Thomas L. Cathey, Patrick J. Rice,* for appellee.

*Proctor & Chambers, Robert J. Proctor, Bradley A. Hutchins, Mullins, Whalen & Westbury, Andrew J. Whalen III,* amici curiae.