## A05A1149. ZAGLIN v. ATLANTA ARMY NAVY STORE, INC. et al.

### (622 SE2d 73)

ADAMS, Judge.

Carolee Zaglin, acting as executrix of the estate of her late husband Jack Zaglin, brought suit against Jack's nephew Carl Zaglin and others, alleging that Carl hid, converted, or meddled with the assets of the estate and with her right of access to certain estate properties and documents; she further alleged that these and other actions amounted to fraud upon the estate. During this bitter dispute, Carl filed a counterclaim seeking to enforce the sale-on-death clauses found in two joint venture agreements regarding two specific properties, and he later sought summary judgment on this claim. On November 2, 2004, the trial court, among other things, granted summary judgment enforcing the agreements, from which Mrs. Zaglin now appeals.

The undisputed facts show that in 1988, Jack, Carl, and Jack's brother Marion entered into two joint venture agreements governing the use and management of two different properties they owned. The agreements reflect that they were designed "to promote their mutual interests by insuring the unity and continuity of control in the ownership and management of the Joint Venture by imposing certain restrictions on the transfer of interests in the Joint Venture." And, the "sole and exclusive purpose" of each agreement was "to continue the ownership, operation, leasing and sharing of expenses" of the two properties.

Each agreement provides that in the event of Jack's death, Carl would purchase Jack's share and Jack's estate "shall be obligated to consummate the sale." The purchase price was to be "equal to the deceased Joint Venturer's percentage share of the Agreed Value set forth on Exhibit 'B'. . . ." The so-called "Agreed Value" was established in the agreements as $520,000 for 1214 King Industrial Drive and $960,000 for 1125 Hayes Industrial Drive by all parties at the time of the signing.

After Jack's death, Mrs. Zaglin made repeated efforts to obtain from Carl her husband's business records and information about the joint venture. She later filed suit for an accounting and for civil conversion and amended her suit twice to add other claims. Within one month of the original suit, she received, apparently from Carl, $421,151 of cash that Jack purportedly "stored in his office"; no further explanation has been given.

Carl counterclaimed and sought to enforce the written joint venture agreements and specifically sought to enforce the sale-on-death clauses. Eventually the trial court, among other things, granted Carl's motion for summary judgment on his entire counterclaim, and

Mrs. Zaglin appeals. The case remains pending below on other matters, including the claim for an accounting.

1. Mrs. Zaglin raises two enumerations of error. She first claims that the trial court abused its discretion by granting Carl's motion to strike paragraph 36 of an affidavit that she submitted in opposition to his motion for summary judgment. In that paragraph, Mrs. Zaglin averred that a document handwritten by her husband indicated that the parties had modified the agreements to provide that the purchase price of the properties would be their market value. Paragraph 36 states:

> In the later years of his life, Jack Zaglin was making many statements to me concerning his finances because of his declining health. He advised me of the cash he had, and that under their buy-sell agreement [for] 1214 King Industrial and 1125 Hayes Industrial[,] his estate would be paid cash for the value of the properties. Since[ ] his buy-sell agreement and all of his properties and papers were in the office, and since the Defendants took total control of the documentation and removed it, we were not able to obtain Jack's copies of the documents which they had taken control of and apparently destroyed.
>
> However, on one sheet of paper in which he listed some of his assets, he did list that the properties were to be evaluated at "Fair Market Value." This was his clear understanding that the schedules on the back of those agreements were modified to sell the properties for "Fair Market Value."
>
> Jack also advised me that he had accumulated around 2 Million dollars in cash.

The trial court ruled that the statements and writings allegedly made by Jack Zaglin were hearsay and that Mrs. Zaglin failed to make the requisite showing of necessity required for the statements to be considered an exception to the hearsay rule. We find no reversible error.

"In order for hearsay to be admitted under the necessity exception to the hearsay rule, it must be established that the testimony is necessary, that it has particular guarantees of trustworthiness, and that the hearsay statements are probative. *Chapel v. State*, 270 Ga. 151, 155 (4) (510 SE2d 802) (1998); OCGA § 24-3-1 (b)." *Henry v. State*, 278 Ga. 554, 557 (6) (604 SE2d 469) (2004). Furthermore, we will affirm unless the trial court's decision to allow the testimony was clearly erroneous. See *Walthour v. State*, 269 Ga. 396, 397 (2) (497

SE2d 799) (1998) (clearly erroneous standard applicable to trial court's decision to admit hearsay evidence).

Mrs. Zaglin claims two facts are put in issue by way of paragraph 36 and the attached handwritten note: (1) that the properties were to be valued at market value and (2) that the agreements had been modified to say so.[1] Neither of Mrs. Zaglin's relevant averments are admissible support for these facts as an exception to the hearsay rule or otherwise.

The first statement — her husband's handwritten note — is inadmissible parol evidence.

> Well-established Georgia law provides that matters outside a contract cannot be used to vary or explain the unambiguous terms of an agreement. While, generally, an ambiguity in a contract may be explained by parol evidence, parol evidence is inadmissible to add to, take from or vary a written contract. (OCGA §§ 13-2-2 (1); 24-6-1; and 24-6-2.) Where the contract is complete on its face and the evidence offered to explain the ambiguity contradicts the terms of the written instrument, it should not be admitted. Moreover, parol evidence of a mere understanding arrived at subsequent to the contract as to the meaning of the prior writing is inadmissible.

(Citations and punctuation omitted.) *Choice Hotels Intl. v. Ocmulgee Fields*, 222 Ga. App. 185, 186-187 (1) (474 SE2d 56) (1996). The phrase "market value" as found on the handwritten note cannot be used to alter the meaning of the unambiguous contract, which provides that the property will be sold for a predetermined price. Accordingly, the evidence is not relevant or probative of the issues in this case, and therefore it is not admissible under the necessity exception to the hearsay rule.

Mrs. Zaglin's second assertion is merely her own conclusion about her husband's understanding of the meaning of the handwritten note. She states, "This [the handwritten note] was his clear understanding that the schedules on the back of those agreements were modified to sell the properties for 'Fair Market Value.' " Her brief makes clear that she does not aver that he told her his understanding, she merely concludes that her husband must have meant or understood that the original agreements had been modified.

Conclusions found in affidavits are to be disregarded when considering a motion for summary judgment. *Love v. Love*, 259 Ga.

---

[1] Mrs. Zaglin has presented no other evidence in support of either allegation.

423, 424 (1) (383 SE2d 329) (1989). " 'If it appears that any portion of the affidavit was not made upon the affiant's personal knowledge, or if it does not affirmatively appear that it was so made, that portion is to be disregarded in considering the affidavit in connection with the motion for summary judgment.' [Cit.]" *Hodges v. Putzel Elec. Contractors*, 260 Ga. App. 590, 596 (3) (580 SE2d 243) (2003). Thus, the statement by Mrs. Zaglin about the meaning of Jack's handwritten note is inadmissible and therefore not probative. We find no error in the trial court's decision to strike paragraph 36 of Mrs. Zaglin's affidavit.

2. Mrs. Zaglin next contends that summary judgment should not have been granted because Carl Zaglin had unclean hands affecting his equitable claim to compel sale of the properties. She alleges that he was in breach of the joint venture agreements because he did not fulfill several of his duties to her as executor of her husband's estate under the same agreements that he seeks to enforce.

Mrs. Zaglin specifically claims that Carl failed to provide an accounting to her upon Jack's death as required by OCGA § 14-8-43, and that Carl denied her the right to "audit, examine, and make copies of or extracts from the books of account of the Joint Venture," as provided in Article 6 of each agreement. She alleges that he breached other duties imposed by the agreements, such as his duty to maintain books, records, audits and taxes, and to maintain certain capital accounts and insurance for the joint venture. Mrs. Zaglin contends she has requested this information and more and has received, essentially, no response. Because Carl has allegedly violated the terms of the very agreement that he sought to enforce, Mrs. Zaglin contends the trial court was precluded from granting equitable relief. She does not otherwise contend that the sale-on-death clauses are not enforceable.

Even if Carl Zaglin failed to uphold certain duties owed to Jack Zaglin's estate, either as required by law or the agreements, the defense of unclean hands is only applicable if his failings can be considered "directly related" to the sale-on-death clauses that he sought to enforce in his counterclaim:

> The unclean-hands maxim which bars a complainant in equity from obtaining relief has reference to an inequity which infects the cause of action so that to entertain it would be violative of conscience. It must relate directly to the transaction concerning which complaint is made. The rule refers to equitable rights respecting the subject-matter of the action. It does not embrace outside matters.

(Citation and punctuation omitted.) *Partain v. Maddox*, 227 Ga. 623, 637-638 (4) (182 SE2d 450) (1971). See also *Whiten v. Murray*, 267 Ga. App. 417, 423-424 (599 SE2d 346) (2004) (plaintiff's actions during her bankruptcy and divorce were not directly related to her equitable claim for constructive trust on certain property). Compare *Rose v. Cain*, 247 Ga. App. 481, 485 (3) (544 SE2d 453) (2001) (claimant not entitled to equitable relief to set aside security deed when he admitted there was no underlying debt and therefore no consideration supporting security deed that he sought to set aside).

Here, none of Mrs. Zaglin's allegations are directly related to the required sale of the property pursuant to the sale-on-death clauses. She alleges that Carl has hidden, converted, or meddled with the assets of the estate and with her right of access to certain estate properties and documents. These allegations relate to Mrs. Zaglin's claims for an accounting, for fraud, and for conversion of other property belonging to her husband's estate. But none can conceivably affect the simple sale-on-death clauses of the agreements, which specifically identify the relevant real property, the agreed price for the sale, and the manner in which the sale will be consummated. Because the unclean hands doctrine is inapplicable to Carl's counterclaim, and because Mrs. Zaglin has raised no other issues of material fact or defense, summary judgment was properly granted in favor of Carl on his counterclaim.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 14, 2005.

*Smith, White, Sharma & Halpern, Larry J. White, Thomas A. Bennett*, for appellant.

*Chamberlain, Hrdlicka, White, Williams & Martin, David P. Thatcher, James M. Kane*, for appellees.