### A08A1144. CLAWSON et al. v. INTERCAT, INC.
(669 SE2d 671)

ANDREWS, Judge.
Donald Clawson, Patrick Donahue, and G. Andrew Smith (collectively "employees"), defendants below, appeal from the trial court's order granting summary judgment to Intercat, Inc. on its claim for specific performance of a contract. After reviewing the record in its entirety, we conclude there was no error and affirm.

The contract at issue is an agreement entered into by each employee when he was hired by Intercat. As part of his compensation, the employee was awarded shares in the corporation. The shareholder agreement provided that, upon termination of the shareholder's employment, the shareholder would sell all of the stock back to the company. The agreement specified that the total sales value of the stock would be determined as of the date of the close of the quarter preceding the date of termination. The agreement also specified that the value used to determine the price for the stocks would be the "total going concern" value of the company. The formula for calculating this "going concern" value was to be determined by combining the book value of the company and the capitalized after tax income. In no event, however, would the shares be valued at less than $25 a share.

The record shows that Smith's employment was terminated on September 24, 1999, Donahue's on October 17, 2000, and Clawson's on February 21, 2002. During this same period, Intercat entered Chapter 11 bankruptcy. The bankruptcy case was initiated on October 6, 1999, and on February 21, 2002, Intercat's plan of reorganization was confirmed.

None of the employees offered his shares back to Intercat after termination. In 2004, the company demanded that the employees sell their shares back as required by the agreement. The company stated that as of the operative date for determining the value of the employees' shares, the company had a negative value. Therefore, it offered the employees $25 a share for the stock.

The employees refused to sell their shares for the price offered and Intercat filed the instant suit, seeking specific performance of the shareholder agreement. Intercat submitted the affidavit of Howard Konicov, a partner in a business investigation services firm and certified public accountant. Using the formula specified in the agreement, Konicov determined that, as of the pertinent time applicable to each employee, the book value of the company and the capitalized after tax income of the company were negative numbers. Thus, the "going concern" value for determining the final share price was also a negative number for each employee. Accordingly, it was determined that the employees would receive $25 a share for their stock as required by the agreement.

1. In their first enumeration of error, the employees claim that the trial court erred in awarding them only $25 a share without first determining that the contract price for purchasing the shares was adequate compared to the fair market value. The employees cite to OCGA § 23-2-133, which provides: "Mere inadequacy of price, though not sufficient to rescind a contract, may justify a court in refusing to decree a specific performance, as may any other fact

showing the contract to be unfair, unjust, or against good conscience." The employees claim that *Kelly v. Vargo*, 261 Ga. 422 (405 SE2d 36) (1991) and *Jenkins v. Evans*, 202 Ga. 423 (43 SE2d 501) (1947) support their argument that the party suing for specific performance must prove that the contract price for purchasing the property is adequate compared to the fair market value.

In *Kelly v. Vargo*, the Supreme Court refused to grant summary judgment to the plaintiff on his claim for specific performance under one of the terms of a liquidation agreement between the sole shareholders of the corporation. Id. at 423. The Court held:

> To prevail in a suit for specific performance of a contract for the sale of land, the plaintiff must prove the value of the property so as to enable the court to determine that the contract was fair, just[,] and not against good conscience. Because that essential element is missing in the evidentiary materials before the trial court, summary judgment should not have been granted.

(Citation, punctuation and footnote omitted.) Id.

In *Jenkins v. Evans*, the plaintiff sought specific performance of an oral contract for the sale of land. The Court held:

> The petition in the instant case did not give with precision the terms of the contract, or its date. In order to authorize specific performance of a contract, its terms must be clear, distinct, and definite. The extent and value of the services rendered were not alleged, or the value of the lands involved. These values must be set forth in order to show that the contract which is sought to be enforced is one not unfair or unjust, or against good conscience.

(Citations omitted.) Id. at 424.

Neither of these cases is on point. Here, Intercat submitted a detailed affidavit showing the calculation of the "going concern" value of the company. This was the formula for determining value that the employees agreed to when they signed the shareholder agreement. More importantly, as the trial court points out in its order, the employees did not submit any evidence to counter this affidavit.

The employees acknowledge that there was no evidence before the trial court of the fair market value of the shares. They claim that there was no burden on them to produce this evidence. They are mistaken.

> When a motion for summary judgment is made and supported[,] an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

(Citation and punctuation omitted.) *Corry v. Robinson*, 207 Ga. App. 167, 169 (427 SE2d 507) (1993).

Here, Intercat has come forward with probative evidence of the value of the company for purposes of valuing shares under the shareholder agreement. See *Moody v. Mendenhall*, 238 Ga. 689, 692-693 (234 SE2d 905) (1977) (in order to prevail on a claim for specific performance, the burden is on the company to come forward with evidence of the value of the company so as to enable the court to determine that the contract was fair, just and not against good conscience). The relevant times for determining the shares' values were during a period of bankruptcy when the company had a negative actual value. Therefore, there was nothing unfair in valuing the employees' stock at $25 a share as required by the agreement.

The employees do not dispute this amount. Instead, they claim that the court must take into account the fair market value of the company before it can award specific performance of the shareholder agreement. But, even assuming that the fair market value is relevant in this case, the employees did not come forward with any evidence as to the fair market value of the company at the pertinent times for valuation of the stock, i.e., the quarter preceding their terminations. Therefore, they have failed to show that the sales price determined under the formula was unjust or unfair. Accordingly, they did not satisfy their burden of coming forward with evidence sufficient to create a triable issue for a jury.

2. The employees also argue that the trial court erred in not striking Konicov's affidavit as to the value of the shares. They contend that Intercat never moved the court to admit the affidavits filed after the summary judgment motion as required by OCGA § 9-11-6 (b).

The trial court's order held that the supplemental affidavits were filed pursuant to a consent order entered on April 23, 2007. In that order, the trial court extended the time for filing of the company's "reply papers in response to [the employees']" opposition to its motion for summary judgment and "in further support of [its] motion for summary judgment." Accordingly, the trial court, in its discretion, allowed the affidavits to be filed. Moreover, the affidavits at issue were filed on May 14, 2007, and the hearing on the motion was not held until July 30, 2007. As one of the cases cited by the

employees states, the rule requires only that supporting material be on file at least 30 days before the hearing in order to be considered for the movant. *Porter Coatings v. Stein Steel & Supply Co.*, 247 Ga. 631, 632 (278 SE2d 377) (1981). Here, the affidavits were on file two and a half months before the hearing. We find no abuse of discretion in the trial court's order. See OCGA § 9-11-6 (b); *Suttle v. Northside Realty Assoc.*, 171 Ga. App. 928, 931 (321 SE2d 424) (1984) (trial judges are given wide discretionary authority to enlarge the time within which an act must be done and may exercise this discretion to permit late-filing of affidavits in support of motions for summary judgment).

3. The employees also argue that summary judgment should have been denied as "unfair, unjust, or against good conscience" under OCGA § 23-2-133 and also under the doctrine of "unclean hands." They claim that enforcing the shareholder agreement was unfair in that they were terminated because they filed a shareholder's derivative suit on or around August 31, 1999. In that suit, the employees claimed that the then president and CEO of the company was transferring company assets to himself, his family members, and companies controlled by his family members without paying the company for the assets. See *In re Intercat, Inc.*, 247 B.R. 911, 913-914 (Bankr. S.D. Ga. 2000). The employees claim that the president fired them because they filed this lawsuit.

As Intercat points out, the company itself was the victim in those instances. Moreover, as the employees themselves acknowledge, the doctrine of unclean hands applies to misconduct in the same underlying transaction as the agreement sought to be enforced. *Zaglin v. Atlanta Army Navy Store*, 275 Ga. App. 855 (622 SE2d 73) (2005). In that case, this Court held that the trial court properly granted summary judgment to the movant for specific performance of a sale-on-death clause in a contract. It stated that none of the defendant's "allegations are directly related to the required sale of the property pursuant to the sale-on-death clauses." Id. at 859.

> [The] allegations [at issue] relate[d] to . . . claims for an accounting, for fraud, and for conversion of other property belonging to [the decedent's] estate. But none can conceivably affect the simple sale-on-death clauses of the agreements, which specifically identify the relevant real property, the agreed price for the sale, and the manner in which the sale will be consummated.

Id.

> The unclean-hands maxim which bars a complainant in equity from obtaining relief has reference to an inequity

which infects the cause of action so that to entertain it would be violative of conscience. It must relate directly to the transaction concerning which complaint is made. The rule refers to equitable rights respecting the subject-matter of the action. It does not embrace outside matters.

(Citations and punctuation omitted.) *Partain v. Maddox*, 227 Ga. 623, 637-638 (182 SE2d 450) (1971). Here, there are no allegations that there was anything unfair, unjust or "violative of conscience" about the buy-sell clause in the shareholder agreement. Accordingly, the trial court correctly held that the employees' equitable defenses were inapplicable to Intercat's claim for specific performance of this agreement. See *Saine v. Clark*, 235 Ga. 279, 281 (219 SE2d 407) (1975) (although the party seeking specific performance must show that the contract is fair and the compensation adequate, it is well established that the fairness of the contract and the adequacy of consideration must be tested by the facts and conditions existing at the time the contract was made); *Zaglin*, supra.

*Judgment affirmed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 27, 2008 — RECONSIDERATION DENIED NOVEMBER 18, 2008 — ▮▮▮▮▮▮

*Thomerson, Spears & Robl, Michael D. Robl*, for appellants.
*Bouhan, Williams & Levy, Frank W. Seiler, M. Tyus Butler, Jr.,* for appellee.