# IN THE OREGON TAX COURT

Thomas P. DENNEHY,
Don McIntire, Don Nelson, Harry Barnes,
Ron Smith, Cathy Smith, Louann Sue Myers,
Maurice Unis, Tom Nelson, Valerie Nelson,
Gresham Health Club, Inc., Gresham Court Club, Inc.,
Jim Weston Pontiac-GMC, Inc.
and Romaine McIntire

*v.*

## CITY OF GRESHAM

(TC 3175)

Gregory W. Byrne, Byrne & Barrow, Portland, represented petitioners.

Matthew R. Baines, Assistant City Attorney, Gresham, represented respondent.

Decision for petitioners rendered April 16, 1992.

### CARL N. BYERS, Judge.

Petitioners are interested taxpayers seeking determination of the effect of Article XI, section 11b, of the Oregon Constitution on respondent's storm drainage ordinance. This court has jurisdiction under ORS 305.583 and 305.410. Since the petition raises only legal questions, both parties have filed motions for summary judgment.

## THE ORDINANCE

On July 17, 1990, respondent enacted ordinance No. 1186, pertaining to storm drainage systems. The ordinance expressly finds that a storm drainage system is needed for developed areas. It imposes a storm drainage system development charge and a storm drainage user charge. The system development charge is imposed to pay for new storm drains to serve new developments. The user charge is imposed to pay for operation, maintenance and capital improvements necessary to serve existing developments. Petitioners challenge only the user charge.

The user charge is related to the amount of impervious surface area on a property. Gresham, Or, Code § 3.300(7). Impervious surface is defined as:

> "Any structures or surface improvements that prevent or retard saturation of water into the surface of the soil (e.g. building roofs, driveways, pavement, sidewalks) or that cause water to run off the surfaces in greater quantity or at an increased rate of flow compared to the natural condition of the property before development." *Id.* at § 3.310.

The ordinance imposes the user charge by the following language:

> "A storm drainage user charge for the use of existing and future storm drainage system shall be paid by each property owner who has impervious surface area on his or her property." *Id.* at § 3.360(1).

The amount of the user charge is fixed by council resolution. The charge is billed on the same billing with water and sewer use charges. By resolution dated October 16, 1990, storm drainage user charges were established at $2.75 per month for "residential" property. All other property, such as multifamily, commercial and industrial property is charged $2.75 per month for each 2,500 square feet of impervious surface, with a minimum charge of $2.75 per month.

## ARTICLE XI, SECTION 11b (MEASURE 5)

Petitioners claim that the storm drainage user charge is a tax on property within the meaning of Article XI, section 11b, of the Oregon Constitution, commonly referred to as Measure 5. The relevant portion states:

> "A 'tax' is any charge imposed by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property except incurred charges and assessments for local improvements." Or Const, Art XI, § 11b, cl (2)(b).

If the user charge is a tax within the meaning of this provision, it should not be billed with the water and sewer charges but must be certified to the county assessor for collection under ORS 310.143 and related sections.

■     Respondent admits that the charge is being imposed by a governmental unit. However, respondent claims it is not imposed on the owner of property "as a direct consequence of

ownership of that property." The court finds that the ordinance does precisely what respondent contends it does not. The ordinance requires the user charge to "be paid by each property owner who has impervious surface area on his or her property." This language does not require any condition other than mere ownership of property.

■　　Respondent argues that an owner chooses to have impervious surface area and, therefore, the imposition of the charge is conditional. The fallacy in respondent's position is its assumption that "property" means only unimproved land. Respondent's ordinance assumes that "property" means unimproved land. However, Article XI, section 11b, of the Oregon Constitution does not make that assumption. Property is not just land. It also includes improvements. Respondent cannot impose a user charge on existing improvements under the fiction that the owner of such property chose to be liable for the user charge.

Respondent cites *Alien Enterprises, Inc. v. Dept. of Rev.*, 12 OTR 126 (1992), in support of its position. In that case, this court held the state amusement device tax (ORS 320.011(1)) was a privilege tax imposed on a person engaged in the business of publicly displaying such devices. The owner of an amusement device can avoid the tax by not engaging in the described business. The amusement device can still be used either for private use or leased to someone who is in the business. The court held that such privilege taxes are not subject to the restrictions of Article XI, section 11b, of the Oregon Constitution.

■　　Respondent's storm drainage user charge is not of the same character. The charge is imposed because of the existence of the impervious surface. Impervious surface, by definition, means virtually all improvements. The only way the owner of an improved property can avoid the charge is to destroy the improvements, removing the impervious surfaces. Respondent ignores reality in contending there is a condition which prevents the charge from being imposed as a direct consequence of ownership of property.[1]

---

[1] The court notes that respondent relies on the legislative definition of "direct consequence of ownership" as found in ORS 310.140(2). In that definition, the legislature, attempting to interpret Measure 5, uses the word "solely" as a limiting condition. The court rejects this limitation.

## INCURRED CHARGES

Respondent also contends that if the charge is on property or the ownership of property, it is an incurred charge. Incurred charges are excluded from the definition of a tax under section 11b. Incurred charges are those imposed by government on property but which can be "controlled" or "avoided" by the property owner under any of three conditions. Only two of those conditions are relevant here.

■    Under the first condition, the charges can be controlled or avoided "because the charges are based on the quantity of goods or services used and the owner has direct control over the quantity." Or Const, Art XI, § 11b, cl (2)(c)(i). In the case of a storm drainage system it is clear that the owner of an improved property does not have "direct" control over the amount of storm drainage services provided. Hence, this exception does not apply.

■    The second condition by which the charge can be controlled or avoided is "because the goods or services are provided only on the specific request of the property owner." Or Const, Art XI, § 11b, cl (2)(c)(ii). Respondent argues that the property owner's action of creating an impervious surface is a form of request for the service. That is not even good sophistry. The clear language of section 11b is that the owner must make a "specific request." To impose the user charge on existing improvements is not a constructive request, let alone a "specific request."

■ ■    The court finds respondent's storm drainage user charge is a tax as defined by Article XI, section 11b, of the Oregon Constitution. Accordingly, it must be imposed in the manner and within the limitations as provided by relevant statutes.

## REMEDY

■    ORS 305.587 provides that if this court finds a challenged charge or assessment is subject to the limits of Article XI, section 11b, the court may order refunds to petitioners. The court may also order such other relief as it considers appropriate, "but such relief shall have prospective effect only." ORS 305.587(1)(b). In view of the above conclusions, the court finds that respondent must refund to petitioners all

storm drainage user charges paid by petitioners that are "in excess of the limits of section 11b, Article XI of the Oregon Constitution." ORS 305.587(1)(a). Further, respondent shall cease immediately all further billing or collection efforts for user charges imposed on existing improved or developed properties. Under the court's ruling, unpaid past due user charges need not be paid. Any liens imposed on property as a result of unpaid user charges shall be removed. Any future imposition and collection of storm drainage user charges must be in accordance with ORS 310.143 and related sections. Respondent may impose the charge on future developments that create impervious surface areas only if the property owner specifically requests the services and the charges do not exceed the actual cost of providing the storm drainage systems.

## ATTORNEY'S FEES

Petitioners request attorney fees on the ground they are seeking "to vindicate substantive rights under the Oregon Constitution" for the benefit of the public, citing *Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975). Respondent contends that petitioners are not entitled to attorney fees, citing *Dennehy v. Dept. of Rev.*, 305 Or 595, 756 P2d 13 (1988). This is an area of some confusion and merits discussion.

In *Deras v. Myers, supra,* appellant challenged statutes imposing limits on election campaign expenditures. The court found the statutes unconstitutional because they conflicted with fundamental rights of free expression. In awarding appellant attorney fees, the court relied upon the inherent power of equity courts, citing *Gilbert v. Hoisting & Portable Engineers*, 237 Or 130, 384 P2d 136, 390 P2d 320, *cert denied*, 376 US 963, 84 S Ct 1125, 11 L Ed 2d 981 (1964) (suit against a union to require fair and democratic union elections). The *Deras* court stated:

> "It is beyond dispute that the interest of the public in preservation of the individual liberties guaranteed against governmental infringement of the constitution is even stronger than that present in *Gilbert*." *Deras v. Meyers*, 272 Or at 66.

The court found the appellant should not be required to "bear the entire cost of this litigation the benefits of which flow equally to all members of the public." *Id.*

More recently, the Oregon Court of Appeals summarized the law with this language:

"We commence with the following propositions: Courts of equity have inherent power to award attorney fees, even absent a statutory or contractual provision so providing, and 'this power has frequently been exercised in cases where plaintiff brings suit in a representative capacity and succeeds in protecting the rights of others as much as his own'; a plaintiff should not be required to bear the entire cost of litigation when the benefits flow equally to all members of the public." *Umrein v. Heimbigner*, 53 Or App 871, 878, 632 P2d 1367 (1981) (citations omitted).

However, this court has had its own experience with this general principle of equity power. In *Dennehy v. Dept. of Rev., supra,* appellant challenged urban renewal tax administration statutes. The Supreme Court upheld appellant's claim that the assessor's practice of rounding up fractional amounts was contrary to the constitution. The Supreme Court stated:

"Because the case must be remanded, we also leave to the Tax Court initial determination of the amount of attorney fees *to which plaintiff is entitled.*" *Id.* at 610. (Emphasis added.)

On remand, this court awarded plaintiff attorney fees. However, that award and the court's other findings were again appealed to the Oregon Supreme Court. In its decision, the Supreme Court noted there was no contractual or statutory basis for the awarding of attorney fees. The court recognized that appellant claimed attorney fees on the same ground as they were awarded in *Deras*. The court explained:

"*Deras* was a proceeding in equity seeking an injunction against the enforcement of certain election laws. The plaintiff was not seeking to vindicate any pecuniary or other special interest of his own aside from that shared with the public at large. In addition, the legislature has not seen fit to authorize the award of attorney fees to parties in some species of lawsuits over the election laws, but not in others. The present case, by contrast, involves a personal pecuniary interest of the plaintiff (*albeit* a very small one), *i.e.*, it is an

action at law in which plaintiff sought a declaration of his rights and the return of money. No injunctive or other equitable relief was sought or granted. Furthermore, the action was brought in a court that has been granted limited and circumscribed authority to award attorney fees in certain cases. *Deras* is not applicable." *Dennehy v. Dept. of Rev.*, 308 Or 423, 427-28, 781 P2d 346 (1989).

Since this court has equitable powers, the reversal of its awarding attorney fees must have been based on one or more of the other factors mentioned. As petitioners point out, it should not depend upon whether a party seeks equitable relief, since that does not determine whether it is for public or private benefit. This leaves only the nature of the court and its claimants. Apparently, the specialized jurisdiction of this court and the fact that the nature of its cases deal with money, as opposed to political rights, make it an exception to the general principles quoted above. Accordingly, the court finds that petitioners are not entitled to recover attorney fees. Now, therefore,

IT IS ORDERED that petitioners' Motion for Summary Judgment is granted to the extent consistent with the above; and

IT IS FURTHER ORDERED that respondent's Motion for Summary Judgment is denied.