2012 ME 42

### CITY OF LEWISTON

v.

### Robert R. GLADU.

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 30, 2012.

Decided: March 27, 2012.

 

Scott J. Lynch, Esq., Hornblower Lynch Rabasco & VanDyke, P.A., Lewiston, for appellant Robert R. Gladu.

David W. Bertoni, Esq., and Anne M. Torregrossa, Esq., Brann & Isaacson, Lewiston, for cross-appellant City of Lewiston.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] Robert R. Gladu appeals, and the City of Lewiston cross-appeals, from a summary judgment entered in Superior Court (Androscoggin County, *MG Kennedy, J.*) in favor of the City concluding that, there being no genuine issue of material fact, the City's stormwater assessment is a fee and not a tax. Gladu argues that there is a genuine issue of material fact and further argues that the assessment is an illegal tax because it does not meet the criteria for fees. The City contends that the Superior Court improperly reduced its attorney fees award. We agree that the assessment is a fee and affirm the judgment.

## I. BACKGROUND

[¶ 2] The City filed a civil complaint on March 4, 2010, alleging that Gladu owed the City for unpaid stormwater fees assessed from 2007 through 2010, plus interest, attorney fees, and a civil penalty. The complaint was filed pursuant to M.R. Civ. P. 80K, 4 M.R.S. § 152(6–A)(Q) (2011), and the City's Stormwater Ordinance, Lewiston, Me., Code of Ordinances § 74–311(b)(5) (July 27, 2006) [Ordinance].

[¶ 3] The City enacted the Ordinance in 2006, and in doing so made findings that Lewiston had poor water quality as a result of stormwater runoff and that the then-current stormwater infrastructure

was inadequate. Ordinance § 74–300. The Ordinance created the Stormwater Management Utility (Utility) for the following purposes:

- To determine the necessary level of municipal stormwater management services for the city;
- To maintain and improve the drainage facilities of the city, to ensure that they perform to design capacity while using best management practices to meet local, state, and federal water quality standards;
- To mitigate the damaging effects of uncontrolled and unmanaged stormwater runoff;
- To support and promote sound stormwater management practices that mitigate non-point source pollution, reduce flooding, and enhance area drainage within the city and;
- To support the goals and objectives of the city ordinances addressing stormwater management in other sections of this Code of Ordinances and to comply with applicable law, including the Maine Department of Environmental Protection Stormwater Management Regulations.

Ordinance § 74–301.

[¶ 4] Pursuant to the Ordinance, the Utility is to assess and collect fees that are "equitably derived based on methods that establish a link between the fees and degree of impact imposed on the stormwater management system and facilities." Ordinance §§ 74–302(a)–(b), 74–308(a). The Storm Water Utility Fee Schedule and Credit Policy (May 18, 2010) (Fee Schedule) provides for annual stormwater fees based on the amount of impervious surface on each property. Single-family homes and duplex residential units are charged an annual flat fee, which is based on the average amount of impervious surface area for those respective property classifications. Fee Schedule § 1.2. All other prop-

erties are charged a base rate equal to a single-family residence's flat fee, plus a rate per square foot that exceeds 2900 square feet. Id. §§ 1.1, 1.3 to 1.4. The Ordinance mandates that the Utility keep stormwater fees separate from all other municipal funds and pay for only stormwater-related expenses from the stormwater fund. Ordinance § 74–304(a).

[¶ 5] The Fee Schedule also makes available three different credits to property owners who wish to reduce or eliminate their stormwater assessment: the City Stormwater System Impact Credit, the Permit Improvements Credit, and the Private Road Credit. Fee Schedule §§ 2.2 to 2.4. The City Stormwater System Impact Credit provides a credit for properties that have a "stormwater collection and discharge system that does not result in impact to the City's stormwater management and system facilities," and has a maximum fee reduction of 100%. Id. § 2.2. The Permit Improvements Credit "is available only to those properties having a stormwater collection and discharge system that exceeds the requirements of a permit issued by the Maine Department of Environmental Protection and/or a permit issued by the City of Lewiston" and has a maximum fee reduction of thirty-five percent. Id. § 2.3. The Private Road Credit applies to owners of private roads that are used to access residential properties and provides for "up to a 100 percent credit for impervious surface of access roads after the first 100 feet in length." Id. § 2.4.

[¶ 6] Beginning in 2007, the City assessed stormwater fees on Gladu's property, which contains a small shopping mall and parking lot. The stormwater that runs off of Gladu's impervious surfaces is collected in Gladu's private storm drains, which then empty into Hart Brook, a water body that is part of the City's stormwater system. The City calculated Gladu's

impervious surface area using an aerial photograph. Gladu has never made a payment toward the assessed stormwater fees, and his balance for the fees on February 9, 2010, was $7521.38, with $1447.25 accrued in interest, totaling $8968.63.

[¶ 7] On December 23, 2010, the City filed a motion for summary judgment and a statement of material facts, generally alleging the facts as we have described them. The statement of material facts also alleges that, in addition to the stormwater fees and interest, Gladu owes attorney fees and costs along with $2000 in penalties.[1]

[¶ 8] Gladu filed his own motion for summary judgment on January 20, 2010. In the motion, Gladu argued that the stormwater assessment is a tax, not a fee, and that the Utility is not authorized to impose a tax.

[¶ 9] After holding a hearing on the opposing motions for summary judgment, the Superior Court issued an order denying Gladu's motion and granting the City's motion. Concluding that there was no genuine issue of material fact, the court addressed the legality of the stormwater assessment. In doing so, the court considered the factors enumerated in *Butler v. Supreme Judicial Court*, 611 A.2d 987, 990 (Me.1992), in determining whether the assessment is a fee: (1) whether the primary purpose is to raise revenue; (2) whether the assessment is "paid in exchange for exclusive benefits not received by the general public";[2] (3) whether the assessment is voluntary; and (4) whether the assess-

ment is "a fair approximation of the cost to the government and the benefit to the individual of the services provided." After examining all four factors, the court concluded that the stormwater assessment is a fee and not a tax. The court ordered that Gladu pay $7619.70 in delinquent stormwater fees,[3] $1197.85 in interest, and an $825 penalty.

[¶ 10] Regarding the City's attorney fees claim, the court concluded that, although "the issues raised in Mr. Gladu's affirmative defenses and his counterclaims are 'inextricably intertwined,'" Gladu's counterclaims were far broader than the City's collection action, and thus awarded the City $2539.90 in attorney fees and $350 in collection costs. Gladu timely appealed from this order, and the City timely cross-appealed, pursuant to 14 M.R.S. § 1851 (2011) and M.R.App. P. 2.

## II. DISCUSSION

[¶ 11] We review de novo the grant of a motion for summary judgment, "viewing the summary judgment record in the light most favorable to the nonprevailing party to determine whether it demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 8, 21 A.3d 1015 (quotation marks omitted).

### A. Fee versus Tax

[¶ 12] There being no disagreement over whether Gladu is delinquent on his

---

1. The Ordinance provides that a person who is delinquent on assessed fees is responsible for "a minimum penalty of $200.00, and attorneys' fees and other costs of collection." Lewiston, Me., Code of Ordinances § 74–311(c)(1) (July 27, 2006).

2. The Superior Court characterized this factor as whether the assessment is directly related to the costs of the regulation.

3. The court added $98.32 to Gladu's principal balance after he asserted in his statement of material facts that the Utility improperly credited that amount to his stormwater account rather than to his sewer and water account as he intended.

stormwater payments if the assessment is determined to be a fee, this inquiry first focuses on whether there is a genuine issue of material fact as to the four factors enumerated in *Butler*. Concluding that there is no genuine issue of material fact, we apply the *Butler* test to the facts in this case in making our determination that the assessment is a fee. This four-factor test is similar to those used in other jurisdictions. *See, e.g., McLeod v. Columbia Cnty.*, 278 Ga. 242, 599 S.E.2d 152, 154–56 (2004) (listing similar factors); *Church of Peace v. City of Rock Island*, 357 Ill. App.3d 471, 293 Ill.Dec. 784, 828 N.E.2d 1282, 1284 (2005) (listing regulatory purpose, proportionality to the cost of the service, and voluntariness as the three requirements for a stormwater service charge to be a fee and not a tax); *Long Run Baptist Ass'n v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 775 S.W.2d 520, 522 (Ky.Ct.App.1989) ("A tax is universally defined as an enforced contribution to provide for the support of government, whereas a fee is a charge for a particular service."). However, "[a]lthough some jurisdictions have held that the benefits must be direct and exclusive . . . the trend seems to be in favor of upholding fees that confer intangible benefits on both those who are assessed and those who are not." Avi Brisman, *Considerations in Establishing a Stormwater Utility*, 26 S. Ill. U. L.J. 505, 521–22 (2002) (cited with approval in *McLeod*, 599 S.E.2d at 155).

1. Whether the Assessment Raises Revenue or is for a Regulatory Purpose

[¶ 13] The facts relevant to the first factor, whether the assessment raises revenue or is for a regulatory purpose, are not in dispute. The Utility's expenses are well documented by both the City and Gladu. Although there are disputes as to whether the assessment can pay for debt services, there is no genuine dispute over the amount of money the City collects and allocates to different expenditures. The lack of a dispute as to any material fact is further evidenced by Gladu's failure to provide proof that the debt the Utility acquired was not used to build or maintain stormwater infrastructure.

[¶ 14] As the material facts are not in dispute, our inquiry turns to whether the facts, as they relate to this factor, weigh in favor of the assessment qualifying as a fee. Gladu argues that the purpose of the assessment is to raise revenue because forty-four percent of the Utility's budget goes toward debt services, including debts acquired by the City prior to the creation of the Utility.

[¶ 15] Although we have never directly addressed whether fees can be used to cover capital improvements and infrastructure, at least one other jurisdiction has addressed this precise issue and upheld a stormwater fee. In *Tukwila School District No. 406 v. City of Tukwila*, the Washington Court of Appeals held that a stormwater fee met the regulatory-purpose requirement when it was enacted to "provide . . . revenue to construct, reconstruct, replace, improve, operate, repair, maintain, manage, administer, inspect, enforce facilities and activities for the storm and surface water utility plan" and to "relieve a burden created by property owners whose impervious surfaces contribute directly to runoff and pollution problems." 140 Wash.App. 735, 167 P.3d 1167, 1172 (2007) (quotation marks omitted). The court recognized that, because property owners contributed to water quality problems through stormwater runoff from their properties, the city could charge a fee to help "defray" the costs of ameliorating the problem. *Id.* at 1173. The court also concluded that "[t]he construction of capital facilities is a recognized regulatory activity." *Id.*

[¶ 16] The fact that the Utility acquired stormwater infrastructure debt from the City does not change the fact that the Utility is using the assessment to cover the costs of regulating stormwater runoff, and part of those regulatory costs include maintaining stormwater infrastructure. Because all of the Utility's expenses are for maintaining or administering the Utility, this factor weighs in favor of concluding that the assessment is a fee and not a tax.

### 2. Direct Relationship Between the Fee and the Benefit Conferred

[¶ 17] The facts relevant to the relationship between the assessment and the benefit conferred are also not in dispute. Gladu does not dispute that stormwater runoff contributes to water pollution, nor does he dispute that the Utility provides benefits to the public by regulating stormwater runoff. Gladu's argument is that he does not receive an individual benefit that is not conferred to the public at large in exchange for paying the stormwater assessment.

[¶ 18] Gladu also argues that the assessment is not related to the Utility's purpose of providing better water quality because the assessment is calculated by area of impervious surface, which relates to the quantity, not the quality, of stormwater runoff. Contradicting Gladu's unsupported factual assertion, the City provided evidence that basing assessments on amount of impervious surface is a widely accepted and recommended method of calculating fees, and that the quantity of stormwater runoff is directly related to water quality. Therefore, there is no genuine issue of material fact as it relates to whether there is a direct relationship between the assessment of the fee and the benefit conferred.

[¶ 19] Our analysis now turns to whether the benefit of managing Gladu's stormwater and improving water quality throughout the City is enough of an individualized benefit to Gladu to warrant upholding the assessment as a fee. Courts in other jurisdictions have differed in their approach to this factor, but in cases involving ordinances most similar to Lewiston's this factor has weighed in favor of a determination that the assessment is a fee. In *McLeod*, the Georgia Supreme Court acknowledged a "trend ... in favor of upholding fees that confer intangible benefits on both those who are assessed and those who are not." 599 S.E.2d at 155 (quotation marks omitted). The court agreed with the Supreme Court of Florida that there was a direct relationship between the fee paid and the benefit conferred if

the fee applies to residential and non-residential developed property, but not to undeveloped property, which actually contributes to the absorption of stormwater runoff; the properties charged receive a special benefit from the funded stormwater services, which are designed to implement federal and state policies through the control and treatment of polluted stormwater contributed by those properties; and, the cost of those services was properly apportioned based primarily on horizontal impervious surface area.

*Id.* (citing *Sarasota Cnty. v. Sarasota Church of Christ, Inc.*, 667 So.2d 180, 184–87 (Fla.1995) (upholding a fee utilizing factors nearly identical to those in *McLeod* )).[4]

4. Gladu cites to *City of Cincinnati v. United States*, 39 Fed.Cl. 271 (1997) and *Howard Jarvis Taxpayers Ass'n v. City of Salinas*, 98 Cal.App.4th 1351, 121 Cal.Rptr.2d 228 (2002) in support of his propositions that he receives no individual benefit from paying the stormwater assessment and that basing the assessment on impervious surface area is not directly related to the purpose of the Ordinance. In

[¶ 20] The City's Ordinance passes this test. The assessment applies only to developed property, the properties receive the special benefit of having their stormwater managed in an effort to comply with state and federal laws, and the assessment is properly based on horizontal impervious surface area. Viewing this factor in light of the recent trend toward upholding fees that "confer intangible benefits on both those who are assessed and those who are not," *McLeod*, 599 S.E.2d at 155 (quotation marks omitted), it weighs in favor of upholding the stormwater fee.

### 3. Voluntariness

[¶ 21] The issue of voluntariness concerns the availability of credits—in other words, whether Gladu has the ability to avoid the assessment if he wishes to do so. The facts pertaining to credits are not in dispute because the parties dispute only whether the available credits make the assessment voluntary.

[¶ 22] Other jurisdictions are split on whether a stormwater fee is voluntary. In *Dennehy v. City of Gresham*, the court concluded that the available choice to have undeveloped land did not make the stormwater fee voluntary. 12 Or. Tax 194, 196–98 (T.C.1992). However, that ordinance did not provide for credits to offset or eliminate the fee. *Id.* at 195–97. In a case where the ordinance did provide for credits, the court upheld the stormwater fee, concluding that it was voluntary. *Church of Peace*, 293 Ill.Dec. 784, 828

N.E.2d at 1284, 1286. In that case, the Appellate Court of Illinois held:

> While it might be cost prohibitive for each plaintiff to construct its own storm water run-off containment system, each would certainly be able to calculate the cost of doing so versus the cost of paying for the use of the City's system. Voluntary participation involves nothing more than weighing the competing costs of participation.

*Id.* 357 Ill.App.3d 471, 828 N.E.2d at 1286.

[¶ 23] We find unpersuasive Gladu's argument that the high cost of avoiding the stormwater assessment renders the assessment involuntary. Gladu has the ability to weigh the costs of paying the stormwater assessment versus the relative costs of avoiding the assessment.[5] The fact that the costs of avoiding the assessment are quite high does not make the assessment involuntary. We conclude that the available credits create a voluntary fee. Our holding is limited to the facts of this case, with emphasis on the City Stormwater System Impact Credit, which provides for up to a 100% fee reduction. Fee Schedule § 2.2. In our analysis, we do not consider whether a fee is voluntary if the applicable ordinance does not include a 100% fee credit.

### 4. A Fair Approximation of the Cost to the Government and the Benefit to the Individual

[¶ 24] Finally, the facts as they pertain to whether the assessment is a fair approx-

---

*Howard Jarvis*, the issue the court addressed was whether the stormwater fee was a user fee or a "property-related" fee requiring voter approval, and thus is not analogous to the facts in this case. *Id.* at 229. In *City of Cincinnati*, the court found that the fee was not based on the services actually used; however, the ordinance did not provide a property owner with the means of reducing or eliminating the fee through credits or their equivalent. 39 Fed.Cl. at 271–72, 276.

5. For instance, a property owner could avoid the stormwater assessment by removing impervious surfaces from his or her property or by engineering a method to contain and disperse stormwater runoff so that the runoff does not enter the City's stormwater system. *See* Storm Water Utility Fee Schedule and Credit Policy §§ 1.1, 2.2 (May 18, 2010).

imation of the cost to the government and the benefit to the individual are not in dispute. This factor concerns whether the assessment is a "fair approximation" of the cost of the regulatory service and of the benefit conferred to the user. The financial records of the Utility are determinative on whether the assessment is a "fair approximation" to the cost, and Gladu has not factually disputed those records. Gladu also has not raised any genuine issue of material fact regarding the relationship between the assessment and the benefits conferred upon him.

[¶ 25] Gladu argues that, because the assessment benefits the public at large, his assessment is not a fair approximation of any purported benefit to him. In *Butler,* we upheld a $300 jury fee even though a litigant who did not ultimately have a jury trial would not impose upon the government any jury-related expenses and would not gain exactly $300 of benefit from paying the fee. 611 A.2d at 990. We concluded that a fee must be only a "fair approximation" of the cost to the government, even if that fee is in some instances greater than the government's actual costs. *Id.* Here, the City has shown through its financial reports that the assessment is based on a "fair approximation" of the cost of administering the Utility. Also, the City's impervious surface-based fee system makes a "fair approximation" of the benefit Gladu receives by having his stormwater managed and water quality protected. Therefore, this factor weighs in favor of upholding the fee.

[¶ 26] After evaluating all four factors, we conclude that each factor individually supports our determination that the stormwater assessment is a fee and not a tax.

B. Attorney Fees

 [¶ 27] "We review the Superior Court's determination of attorney fees for an abuse of discretion," and the award is upheld unless it is clearly erroneous. *Lee v. Scotia Prince Cruises Ltd.,* 2003 ME 78, ¶ 18, 828 A.2d 210. Here, the court did not abuse its discretion in reducing the City's attorney fees award from the amount the City originally requested because the court was best able to observe the situation and allocate the attorney fees appropriately.

C. Conclusion

[¶ 28] We affirm the summary judgment of the Superior Court in favor of the City concluding that, there being no genuine issue of material fact, the Utility's assessment is a fee and not a tax. We also affirm the decision of the Superior Court in awarding a civil penalty, attorney fees, and other costs.

The entry is:

Judgment affirmed.